STATE of Oklahoma, for the use of the BOARD OF COUNTY COMMISSIONERS OF SEMINOLE COUNTY, ex rel. James F. HANING, a resident taxpayer of Seminole County, Plaintiffs in Error,

v.

S. N. NORTH, G. N. Cherry, J. M. King, Hugh Roff, and the Board of County Commissioners of Seminole County, Oklahoma, Defendants in Error.

No. 37376.

Supreme Court of Oklahoma.

April 9, 1957.

Rehearing Denied May 14, 1957.

· James F. Haning, A. C. Kidd, Wewoka, for plaintiffs in error.

Horsley, Epton & Culp, Wewoka, for defendants in error.

HALLEY, Justice.

This is an appeal from an order of the Superior Court of Seminole County sustaining a demurrer to the petition of the plaintiff, the State, for the use and benefit of the Board of County Commissioners of Seminole County ex rel. James F. Haning, a resident taxpayer of that County, against S. N. North, G. N. Cherry, J. M. King, Hugh Roff and the Board of County Commissioners, filed December 29, 1954. The action was dismissed upon failure of the plaintiff to plead further after demurrer was sustained.

The petition of the plaintiff, omitting formal parts, alleged in substance as follows:

That the plaintiff is a resident taxpayer of Seminole County and under the provisions of Sections 372 and 373, 62 O.S.1951, has a right to maintain this action in the interests of the State, Seminole County and, the taxpayers thereof, where the county officers failed to institute and prosecute with "due diligence" an action against any county officer who has ordered the unlawful or fraudulent transfer of any county funds or property pursuant to any unlawful or fraudulent contract, and providing a penalty against any such offending officer of double the value of any funds or property unlaw- fully transferred.

Section 373, supra, provides for such an action by a taxpayer where demand for such action has been made upon the Board of County Commissioners by ten resident taxpayers, to file such action and they have failed to file and diligently prosecute such

action and the taxpayer and Board of County Commissioners shall receive an equal share in any recovery had in an action filed by the taxpayer.

November 23, 1949, eleven taxpayers of Seminole County filed a demand upon the County Commissioners requesting that they institute and prosecute with due diligence an action to recover fifty-three lots in the City of Wewoka, alleged to have been wrongfully conveyed in 1940, 1943 and 1944, by Commissioners' Tax Deeds to S. N. North and the other defendants above named, which conveyances were unauthorized, unlawful, fraudulent and void because:

(a) S. N. North was the real owner of the lots described in their exhibit (a) prior to the Commissioners' sales there shown, and owed a duty to pay the ad valorem taxes thereon.

(b) That such properties were acquired by S. N. North at the various Commissioners' sales in the names of the other defendants, acting on behalf of S. N. North in a scheme to avoid the payment of just taxes, J. M. King being a sister-in-law of S. N. North, G. N. Cherry his sister and Hugh Roff his agent.

(c) That S. N. North owed a moral and and legal obligation to pay the ad valorem taxes against the lots mentioned, but in an unlawful and fraudulent attempt to evade such payments and defraud the County Commissioners and taxpayers of Seminole County, caused the lots to be advertised and sold to the defendants named, who acted as his agents and trustees, for a fraction of the taxes due and the value of the lots.

(d) That such sales were and are fraudulently defective and void, and the deeds issued void because the sales were not held and conducted in the manner provided by law.

A transcript of the proceedings in the Office of the County Treasurer of Seminole County on the sale of County property acquired at re-sale and the approval thereof of the County Commissioners is incorporated in the petition by reference.

That after bids were submitted the Board of County Commissioners met and approved the various sales, and that each "purchaser" named was acting as the agent of S. N. North, and that S. N. North paid Seminole County for said lots the total sum of $1,710.50, which purportedly extinguished ad valorem taxes due in the sum of $11,908.75; that the fifty-three lots had an assessed value of $10,865, on the dates of the various sales and had a fair cash value of $44,420, but that the County received only $1,710.50, or $10,198.25 less than the tax liens thereon.

That S. N. North defrauded the County Commissioners and taxpayers of Seminole County by purchasing his own property at the sales in the names of his agents above named, but that such fraud was not known to the Commissioners until the "Demand of Taxpayers" was served upon them, and that the fraudulent acts of S. N. North in having his own property bid in at Commissioners' tax sales for a small portion of the taxes due and the value of the lots makes him liable to Seminole County for double the value of such property or $88,840.

That after receiving the Demand of the Taxpayers, the County Commissioners authorized the then County Attorney to institute and diligently prosecute an action to recover the lots, but that before such suit could be filed, S. N. North on December 5, 1949, filed in the District Court of Seminole County, cause No. 25,223, wherein the County Commissioners were named as defendants, seeking to quiet his title to the lots as against the County Commissioners and for the purpose of defeating the suit ordered filed by the Commissioners.

On March 20, 1950, the Commissioners filed an answer and cross-petition wherein they sought to set aside the Commissioners deeds to the defendants named conveying the lots here involved, but no action has since been taken by the Commissioners through the County Attorney in that action and almost five years have elapsed since that cross-petition was filed, and on April 8, 1954, S. N. North dismissed his District

Court action as to certain lots involved without prejudice or objection by the County Commissioners and without trial of any of the issues tendered by Commissioners' cross-petition.

The answer and cross-petition of the Commissioners in the District Court case have been pending almost five years and none of the issues therein have been tried and plaintiff alleges a complete failure to diligently prosecute the cause of action to recover the property of Seminole County so unlawfully transferred, and for this reason the plaintiff taxpayer is entitled to prosecute this action pursuant to Section 373, 62 O.S.1951.

It is further alleged that the County Commissioners of Seminole County are made parties defendants because it is so required under our statutes and that the liability of defendants is joint and several but that plaintiff seeks judgment against S. N. North and upon the real estate involved.

Plaintiff prays for judgment against S. N. North for $88,840 and costs, to be distributed to plaintiff and the Board of County Commissioners as by law provided.

In the alternative plaintiff prays that the deeds conveying the lots to the defendants be vacated and title thereto quieted in Seminole County; for judgment against S. N. North for $44,420, the value of the lots; for an accounting covering all sums received by defendants since they acquired the lots in question, to be paid to the Board of County Commissioners and the plaintiff as provided by law and for costs of this action.

We note that the present Board of County Commissioners filed an answer in this action admitting failure to diligently prosecute the cross-petition filed by Seminole County in the District Court cause No. 25,223, and also admitted that S. N. North's action in purchasing his own property at Commissioners' sale in the name of his agents was unlawful and fraudulent upon Seminole County, and should be set aside or grantees adjudged to hold the land in trust for the County. They prayed for judgment as prayed for by the plaintiff in the present action and that one-half of such judgment inure to the benefit of Seminole County.

The demurrer filed by the defendants was based upon three grounds as follows: that no cause of action was stated; that the petition shows upon its face that it is barred by limitations; that another cause of action between the parties in interest in another court covering the same subject-matter and issues here tendered is pending.

■ Since the parties occupy the same position here as in the trial court, we shall refer to them as plaintiff and defendants. The demurrer to plaintiff's petition was sustained upon all three of the grounds above stated, and the judgment of the trial court should be affirmed if it is found that the demurrer should be sustained upon any one of the three grounds relied upon by defendants.

It is first contended that the petition does not state a cause of action. There is no question but that S. N. North was the owner of the lots involved before they were sold at resale. It must be kept in mind that no attack is made upon the regularity of any of the resale proceedings nor upon the resale deeds issued to the County of Seminole as a result of such resales.

The questions naturally arise as to what character of title did such valid resales vest in the County? Did such resales wipe out or extinguish the title owned by S. N. North prior to the resales, and did a resale extinguish all existing taxes against the property which were delinquent on the date when resale notice was first published?

While the deeds here sought to be vacated are Commissioners' deeds to the alleged agents of the former owner, S. N. North, they are based upon resale tax deeds to Seminole County, the regularity and validity of which are not questioned. Only the County Commissioners' deeds are attacked and sought to be declared void, which would have the effect of re-vesting title in Seminole County.

The petition of plaintiff alleges that S. N. North was the former owner of land sold for taxes, acquiring the land for a fraction of the delinquent taxes accrued, and that such action by S. N. North was fraudulent in that it was a scheme to evade the payment of his just taxes.

When land is sold for taxes at resale by the County, may the former owner thereafter acquire the land free from ad valorem taxes, or are such taxes reimposed when the former owner re-acquires title directly from the County at Commissioners' sale or from some other purchaser at such sale?

This question should not be confused with a state of facts where the former owner is under a personal or moral obligation to protect third parties, such as mortgagees, cotenants, lienholders or lessees, when he re-acquires title to land burdened with such obligations by the acts of such former owner. This Court has often held that under such circumstances, the land reacquired by a former owner, such former obligations are revived against the land. No such obligation exists in the case before us and the cases cited by the plaintiff involving such facts are not here applicable.

When the land was offered at resale and sold to Seminole County, said County was certainly under no obligation to pay the taxes assessed against the land. Section 432f, 68 O.S.1951, provides in part as follows:

" * * * The issuance of such deed shall effect the cancellation and setting aside of all delinquent taxes, assessments, penalties and costs previously assessed or existing against said real estate, and of all outstanding individual and county tax sale certificates; and shall vest in the grantee an absolute and perfect title in fee simple to said lands; * * * "

■ In McDonald v. Duckworth, 197 Okl. 576, 173 P.2d 436, 438, it is said in the body of the opinion:

"We have held and are committed to the rule that the issuance of a resale tax deed shall effect the cancellation and setting aside of all delinquent taxes, assessments, penalties, and costs previously assessed or existing against real estate sold at resale tax sale, and of all outstanding individual and county tax sale certificates; and shall vest in the grantee an absolute and perfect title in fee simple in the real estate involved. Shnier v. Vahlberg, Co. Treas., 188 Okl. 471, 110 P.2d 593. * * *

" * * * When the state has sold the property to a bona fide purchaser in good faith, without collusion, nor as the agent of the person obligated to pay the tax, a deed executed in pursuance thereof transfers a full and complete fee simple title to the purchaser. Such purchaser may thereafter convey full and complete merchantable title to anyone, including the former owner, except that such title would inure to the benefit of such third parties such as mortgagees, cotenants, and lienholders and such other persons to whom the original obligor owed a personal obligation to pay or protect. * * * "

"From the over all picture presented in the present case we feel that we should adopt the rule that the reconveyance of the property to the former owners, by the bona fide tax deed purchaser who was in no manner under obligation to pay the taxes, does not operate to revive the tax lien against said property in favor of the governmental body imposing the tax and engineering and conducting the sale."

■ It is clear that the lots were sold at resale to a purchaser not obligated to pay the taxes, Seminole County, which extinguished all delinquent taxes and the former owner could then buy the land from the Commissioners.

Plaintiff contends that his allegations of fraud are sufficient to state a cause of action. It is alleged that S. N. North perpetrated a fraud upon the Commissioners and taxpayers by purchasing his own property at tax sales in the name of his agents for a small fraction of the taxes due or value of the property, and that there existed a "design and scheme" on the part of S. N. North to evade the payment of his taxes; that the lots were unlawfully transferred from Seminole County in "pursuance of an unauthorized, unlawful, fraudulent and void contract" in settlement of the claims of Seminole County for ad valorem taxes. It is further alleged that the sales by Seminole County were void because not held and conducted in the time and manner provided by law.

No specific facts are alleged which made the Commissioners' sales fraudulent. Only general allegations are alleged. At page 72, 24 Am.Jur., Fraud and Deceit, § 244, it is said:

"* * * An allegation of 'fraud' or of 'acting fraudulently,' not including the facts to which such a term has reference, is a mere legal conclusion which a demurrer does not admit or confess. * * *"

In Wright v. State ex rel. Walcott, 104 Okl. 57, 230 P. 268, it was said in the second paragraph of the syllabus:

"A demurrer does not confess or admit a conclusion of law deducted by either party from the facts pleaded. Neither does it admit any construction placed by him on any instrument pleaded and set forth in the complaint."

■ Again in Hoffman v. Webb, 113 Okl. 150, 240 P. 104, it is said in the second paragraph of the syllabus:

"Where there is no averment of facts in the petition from which the conclusions of law are drawn, the same will have no force in a pleading, and

no issue is presented thereby, and, although such conclusions are not controverted by the answer, they will not be taken as true."

In Poulos v. Carter, 200 Okl. 325, 193 P.2d 591, 594, it is said:

"* * * Upon the consideration of a demurrer to a petition only those facts well pleaded in the petition are admitted by the demurrer. * * * mere conclusions of a pleader stated in general terms do not constitute well pleaded facts which a demurrer admits. * * *"

■ Having concluded that the former owner, S. N. North, after a valid resale of the lots to Seminole County, had a perfect right to acquire a valid title from the County Commissioners, either in his own name or that of his agents, because the County, as grantee at valid resales had acquired a new title in fee simple, free from all delinquent taxes, we think the petition fails to state a cause of action against the defendants, and that the allegations of fraud are too general and fail to state the specific facts constituting the fraud alleged in general terms, and render the petition subject to demurrer upon that ground.

Having concluded that the petition fails to state a cause of action against the defendants, it is unnecessary to discuss the question of whether the cause of action is barred by limitations, or by the pendency of another action involving the same parties and subject-matter. The judgment is affirmed.

CORN, V. C. J., and BLACKBIRD, JACKSON and CARLILE, JJ., concur.

WILLIAMS, J., concurs in result.

WELCH, C. J., and JOHNSON, J., dissent.